UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK_____
-------------------------------------------------------------x
                                                        :
JOSE FONG,                                              :
                                                        :
                        Petitioner,                     :
                                                        :          _____06 Civ. 1719 (GEL)
            -v-                                          :
                                                        :          **OPINION AND ORDER**
THOMAS POOLE, Superintendent, Five Points               :
Correctional Facility,                                  :
                                                        :
                                                        :
                        Respondent.                     :
                                                        :
-------------------------------------------------------------x

Andrew J. Ceresney, Sara M. Zausmer, Jeffrey C. Berman,
Debevoise & Plimpton LLP, New York, NY, for petitioner.

Andrew M. Cuomo, Attorney General of the State of
New York (Roseann B. Mackechnie, Deputy Solicitor
General for Criminal Matters, Ashlyn H. Dannelly,
Assistant Attorney General, Of Counsel), for respondent.

GERARD E. LYNCH, District Judge:

    Jose Fong, an inmate at the Clinton Correctional Facility, petitions for a writ of habeas

corpus pursuant to 28 U.S.C. § 2254, arguing that the Allen charge issued to the jury during his

trial deprived him of his constitutional rights to a fair trial and due process. The petition will be

granted.

## BACKGROUND

    Only facts relevant to the present petition will be recited here.

    Jose Fong ("Fong" or "petitioner") is currently serving a sentence of six and one-half to

thirteen years' imprisonment stemming from his 2003 conviction for distribution of a controlled

substance. See People v. Fong, 791 N.Y.S.2d 53 (1st Dep't 2005). Fong was arrested on May

19, 2002, after an undercover police officer purchased seven grams of cocaine from a drug dealer roughly fitting petitioner's description. Fong was subsequently charged with one count of criminal sale of a controlled substance in the third degree, N.Y. Penal Law § 220.39.

On February 26, 2003, Fong proceeded to trial in the New York State Supreme Court, New York County, before the Honorable Edward McLaughlin and a jury. At trial, petitioner's counsel argued that the government had not presented sufficient evidence tying Fong to the crime. Specifically, petitioner's counsel argued that the government had not met its burden of proof as a result of, inter alia, (1) "the absence of pre[-]recorded buy money" on Fong at the time of Fong's arrest (Tr. 389); (2) the police officers' failure to record the facts of the transaction and arrest contemporaneously (id. 392-94); (3) the failure to preserve certain evidence (id. 398); and (4) the differences between the radioed description of the dealer and Fong's actual appearance (id. 393-96).

On March 3, 2003, after summations and the initial jury charge, the jury began deliberations. Approximately an hour and a half after starting deliberations, the jury requested and received a read back of some testimony, and began deliberating again at 12:55 p.m. (Id. 449-50.) Approximately two hours later, the jurors sent out a note stating, "[w]e the jurors request guidance. Four jurors believe he's not guilty the rest believe he's guilty." (Id. 450.) By then, three hours had passed since the beginning of deliberations, including a lunch break and fifty minutes of read-back testimony.

At sidebar, defense counsel requested that "a mild Allen charge be given," and asked the judge to instruct the jurors that "they should not compromise their convictions but at the same time they should listen to their fellow jurors and they should go back there and try to reach a

unanimous verdict." (Id. 451.)  See Allen v. United States, 164 U.S. 492 (1896).  Defense

counsel observed that the jury note was "very specific and their lines are drawn." (Id.)  The

prosecutor suggested that an Allen charge might be premature, to which the judge responded,

"[t]his is pathetic." (Tr. 451.)

 The trial court then instructed the jury as follows:

> Let posterity not know what it is you're talking about.  "We the
> jury request guidance.  Four jurors believe he's not guilty the rest
> believe he's guilty[.]"  What do you want from me?  You're the
> jury.  We bring you, we assemble you for the sole purpose of
> getting a decision.  If you didn't want to be here, if you think this
> is a decision beyond your capacity to reach, you shouldn't have
> allowed yourself to be sworn as jurors.

> The point of this process is to reach a verdict[.  T]hat's essentially
> not as difficult as it may seem because it's not a situation where
> one side has to do one thing and another side has to do another
> thing and it gets real confusing.

> Any criminal trial is about whether the prosecution meets a burden
> of proof.  When I gave to one group I believe that analogy about
> the strength test in a carnival, in a state fair about the prosecutor
> having the mallet, paying his money [so] to speak, taking his
> chances, swinging to try to drive the metal device, the ball, the
> metal device up to ring the bell.

> In any case that's what a criminal trial is about.  And you folks
> have to sit there and mentally try to man[a]ge from your
> assessment of the evidence, did the bell ring or not.  Something
> happened in this case.  They rang the bell or they didn't.  It was
> not a non event.  You can't just say oops, we can't decide this.  For
> five hundred years in England, W[]ales, Ireland, Scotland,
> America and other places with juries, they got a burden of proof.
> Things happen and then the only entity in creation who can say
> whether the bell has rung is the jury in the case so the guidance is
> go through whatever you need to go through to reach the verdict.
> You have to go over since it's a credibility assessment that you
> have to make, go through the things that I alerted you to regarding
> a human being[']s credibility.  If what I alerted you to by way of
> the tests and the standard and the considerations is helpful, that's

fine, use that.

If in your own lives you use other things to decide whether or not you're being lied to or whether somebody is being accurate or truthful, use those things. The focus is on whether the prosecutor has met his burden of proof.

The decision has to be based on the record of this case. I don't have a magnifying glass or an ear piece. I don't know what is going on in there but if somebody is talking about things that weren't testified to, it couldn't be that way because or let me tell you how it really is, forget that remember the part of the charge that a Judge gives a jury, is the record of this case.

What is [sic] the record of this case supported? What are the natural and logical things that the testimony in this case supports? That doesn't mean you have to accept anything because it was said. You've got an absolute right to say I don't believe that, I don't believe this, or I don't believe anything but if you are talking about things that are not in the record in the testimony then you're probably not doing what you're suppose[d] to be doing.

So that was the guidance. Step in. Continue deliberations. We await your verdict.

(Id. 453-56.)

At 3:00 p.m., after the jury retired again to deliberate, defense counsel alerted the judge that he had an objection, to which the judge responded, "I bet. What is it?" (Id. 456.) Defense counsel explained his objection to the "last part" of the charge, when the court "start[ed] talking about the record. I believe the word record was stated at least three times." (Id.) The judge responded, "I hope to have said it a half a dozen times if I fell short of my goal, I apologize." (Id.) Defense counsel explained that the charge directly attacked his argument in summation relating to the lack of evidence in the record tying petitioner to the crime. The judge conceded that "any neutral reading of your summation did have quite a lot to do about what's not in the record," but warned counsel that "I don't think it's a good idea for me to bring [the jurors] back

4

out and say if you think I was talking about a summation forget about it." (Id.) Defense counsel

agreed, saying, "I don't know what I could formulate to ameliorate the harm that you just caused

so I think that my objection should stand and I think the appropriate relief would be a mistrial."

(Id. 457-58.) The motion was denied.

Some 25 minutes after the supplemental charge, at approximately 3:25 p.m., the jury sent

another note requesting a read back of the "description of Fong's clothes" given by two

prosecution witnesses. (Id. 459.) The court reporter read back the requested testimony, and at

approximately 4:05 p.m., the jury again retired to continue deliberations. (Id. 460.) Ten minutes

later, at approximately 4:15 p.m., the jury returned a verdict of gulty. (Dannelly Decl. Ex. B at

22.)

Fong appealed his conviction, contending, inter alia, that the trial court's supplemental

charge was unconstitutionally coercive. On March 10, 2005, the Appellate Division affirmed

Fong's conviction. Fong, 791 N.Y.S.2d 53. The appellate court declined to review the merits of

petitioner's Allen charge argument, finding that Fong had "failed to preserve" his coercion

argument because defense counsel's objections to the Allen charge "were insufficient to alert the

court to this claim," and because counsel declined the court's offer to issue a further charge. Id.

However, although the court declined to review the propriety of the Allen charge, it noted "with

some dismay" that the trial judge "framed his own impromptu Allen charge, . . . including

remarks that . . . seemed to imply that the jurors were failing in their duties and to attempt to

shame them into reaching a verdict." Id. at 53-54; see id. at 54 (warning that "each time a judge

declines to employ the carefully thought-out measured tone of the standard jury charge in favor

of improvised language, an additional risk of reversal and a new trial is created"). The court also

acknowledged similarities between the Allen charge given in this case and the Allen charge given by the same judge that had recently been rejected by the New York Court of Appeals as unduly coercive in People v. Aponte, 2 N.Y.3d 304 (2004). Nevertheless, despite the similarities between the Allen charge given in this case and the Allen charge rejected in Aponte, the court stated without further elaboration that "were we to review" the propriety of the Allen charge in this case, "we would find that under these circumstances the charge was not coercive." 791 N.Y.S.2d at 53.

On May 31, 2005, the New York Court of Appeals denied leave to appeal. People v. Fong, 798 N.Y.S.2d 731 (2005). On March 3, 2006, Fong filed a pro se petition for habeas corpus relief pursuant to 28 U.S.C. § 2254, contending that the trial court's Allen charge was unduly coercive and denied petitioner his constitutional rights to a fair trial and due process.[1] On February 28, 2007, the Court appointed counsel for Fong, and directed counsel to submit supplemental briefs addressing petitioner's Allen charge argument. Petitioner filed a supplemental brief on April 27, 2007; the government responded on May 23, 2007. The petition was fully briefed as of June 7, 2007.

## DISCUSSION

Respondent makes two principal arguments in response to this petition. First, respondent argues that petitioner waived any potential objection to the alleged coerciveness of the instant Allen charge because he did not comply with New York's contemporaneous objection rule. Alternatively, respondent argues that, even if petitioner's claim is not procedurally barred, it

---

[1] Fong's original petition also included a claim that the trial court improperly allowed police testimony about drug sale practices. The Court previously denied that claim as meritless. (Order of Feb. 28, 2007, at 3.)

should be denied because the <u>Allen</u> charge in this case was not unconstitutionally coercive. Both arguments are unpersuasive.[2]

## I.      Contemporaneous Objection Rule

First, respondent argues that petitioner's <u>Allen</u> charge claim is barred by an adequate and independent state procedural ground. Specifically, respondent argues that "counsel never notified the [trial] court that he had any objection to the charge on coerciveness grounds," and therefore that New York's "contemporaneous objection" rule bars appellate review of petitioner's <u>Allen</u> charge claim. (Resp. Mem. 4.) <u>See</u> N.Y. Crim. Proc. L. § 470.05(2). Petitioner counters that "the Appellate Division's ruling that petitioner's challenge to the <u>Allen</u> charge was unpreserved did not constitute a state law ground that was adequate to support the judgment" because the Appellate Division's application of the contemporaneous objection rule was "improper." (Pet. Mem. 12.) The Court agrees with petitioner.

A federal court may not grant habeas relief where a state court's denial of a claim rests on an independent and adequate state law ground, including failure to follow a state procedural rule requiring such a claim to be raised in a certain manner lest the defendant forfeit that claim. <u>Coleman v. Thompson</u>, 501 U.S. 722, 729-32 (1991). But the adequacy of an alleged state procedural bar is itself a question of federal law, <u>Lee v. Kemna</u>, 534 U.S. 362, 375 (2002); <u>Garcia v. Lewis</u>, 188 F.3d 71, 77 (2d Cir. 1999), and "a [state] procedural bar will be deemed 'adequate' only if it is based on a rule that is 'firmly established and regularly followed' by the

_____

[2] There is no dispute that the instant petition is timely, as it was filed within one year of the date that petitioner's conviction became final. <u>See</u> 28 U.S.C. § 2244 (d)(1). In addition, there is no dispute that, by presenting his <u>Allen</u> charge claim to the Appellate Division and in his application for leave to appeal to the New York Court of Appeals, petitioner also exhausted this claim in state court. <u>See</u> <u>Daye v. Attorney General</u>, 696 F.2d 186, 191 (2d Cir. 1982) (en banc).

state in question." Garcia, 188 F.3d at 77, quoting Ford v. Georgia, 498 U.S. 411, 423-24

(1991). The adequacy of a state procedural bar is reviewed de novo, Monroe v. Kuhlman, 433

F.3d 236, 240 (2d Cir. 2006), and the state bears the burden of proving the adequacy of the state

procedural ground. Cotto v. Herbert, 331 F.3d 217, 238 (2d Cir. 2003).

New York's contemporaneous objection rule requires a party to register a protest to a

ruling or instruction "at the time of such ruling or instruction or at any subsequent time when the

court had an opportunity of effectively changing the same." N.Y. Crim. Proc. L. § 470.05(2).

However, the rule does not require that a party repeatedly object to an adverse instruction after it

is given, nor does the rule require that a party make an express objection to the instruction to

preserve the objection. Instead, the rule provides that "a party who without success has *either*

*expressly or impliedly* sought or requested a particular . . . instruction, is deemed to have thereby

protested the court's ultimate . . . failure to . . . instruct accordingly sufficiently to raise a

question of law with respect to such . . . failure *regardless of whether any actual protest thereto*

*was registered*." Id. (emphasis added); see Cotto, 331 F.3d at 244-45 ("Once a party has made

his position known to the court, the court does not require him to make repeated pointless

protests after the court has ruled."); People v. Garraway, 779 N.Y.S.2d 925, 925 (3d Dep't 2004)

(where a defendant "impliedly sought a ruling" from the trial court, "defendant is deemed to have

have sufficiently protested [the trial court's] ultimate determination . . . thereby preserving the

issue for appellate review").

A state court's finding of procedural default rests on an inadequate procedural ground

where the record demonstrates that counsel did, in fact, comply with the contemporaneous

objection rule. See McRae v. New York, 271 F. Supp. 2d 402, 407 (E.D.N.Y. 2003); Murden v.

<u>Artuz</u>, 253 F. Supp. 2d 376, 385-86 (E.D.N.Y. 2001). Alternatively, even if a habeas petitioner did not literally comply with the contemporaneous objection rule, the rule is nevertheless inadequate to bar a claim where the rule is not applied "evenhandedly to all similar claims." <u>Cotto</u>, 331 F.3d at 239, quoting <u>Garcia v. Lewis</u>, 188 F.3d 71, 77 (2d Cir. 1999). Federal courts examine whether a rule is "firmly established and regularly followed" by examining "the specific circumstances presented in a case." <u>Monroe</u>, 433 F.3d at 241 (citations and internal quotation marks omitted). Even if a rule is considered to be established as a general matter, "such a rule considered in the specific circumstances of a case might be inadequate to preclude federal habeas review." <u>Id</u>. If the state court "misapplied" the rule "in this case in particular," then the rule is inadequate to bar federal review. <u>Cotto</u>, 331 F.3d at 240. Petitioner satisfies these tests.

> A.     Compliance with Contemporaneous Objection Rule

A fair reading of the record reveals that petitioner complied with the contemporaneous objection rule. When the jury indicated that it was deadlocked, defense counsel requested that the court give a "*mild* <u>Allen</u> charge" with "[l]anguage to the effect that [the jurors] should not compromise their convictions." (Tr. 451 (emphasis added).) Although respondent concedes that "when a defendant requests a jury charge, and the trial court either fails to rule upon the request or declines to give the instruction[,] he is deemed to have" complied with the contemporaneous objection rule, he argues that the trial court actually issued the "mild <u>Allen</u> charge" as requested, and that petitioner's request therefore cannot be considered a contemporaneous objection. (Resp. Mem. 10.) However, petitioner argues that the trial record "clearly demonstrates that petitioner requested a mild <u>Allen</u> charge with specific language and that the court did not include that language, or any comparable instruction." (Pet. Reply 4 n.2 (citations omitted).)

Petitioner is correct. Contrary to respondent's argument, the trial court did not issue a *mild* Allen charge. Instead, as the Appellate Division noted "with dismay," the trial judge "framed his own impromptu Allen charge, . . . including remarks that . . . seemed to imply that the jurors were failing in their duties and to attempt to shame them into reaching a verdict." 791 N.Y.S.2d at 53-54. Indeed, the Appellate Division understated the matter; the judge ridiculed the jury's inquiry, directly accused the jurors of being "[in]capa[ble]" of reaching a verdict, and suggested that if the jurors couldn't reach a verdict, they "shouldn't have allowed [themselves] to be sworn as jurors." (Tr. 454.) The purpose of an Allen charge is to "impel a verdict" while "assur[ing] that those who have conscientious opinions for either side need not yield them in order to assure unanimity." United States v. Mejia, 356 F.3d 470, 477 (2d Cir. 2004). Any Allen charge, and certainly a "mild" version, as specifically requested by defense counsel, should therefore include language indicating that the jurors should not "compromise their convictions" while attempting to reach a unanimous verdict. "[S]ham[ing]" jurors "into reaching a verdict" is contradictory to petitioner's request that the court instruct the jurors that they should not "compromise their convictions" in their attempt to reach a unanimous verdict. 791 N.Y.S.2d at 53-54.

Moreover, as noted by the Appellate Division, the Allen charge given in this case was substantially similar to the rejected charge in Aponte, further indicating that the instant Allen charge is not properly characterized as "mild." In Aponte, the Court of Appeals found that a substantially similar Allen charge deprived the defendant of his right to a fair trial because it "coerce[d] jurors with untoward pressure." 2 N.Y.3d at 308. Whether the instant charge was as coercive as the one given in Aponte, and whether the instant charge deprived petitioner of his

10

right to a fair trial, are separate issues considered below; however, it is clear that where an Allen charge is so similar in "tone" and language to one that had previously been rejected as unduly coercive, 791 N.Y.S.2d at 54, the subsequent charge cannot be properly characterized as "mild." Therefore, although the court did not expressly deny petitioner's request for a "mild Allen charge," that request was implicitly denied by the trial court's supplemental instruction.

Furthermore, petitioner's request identified particular language that the court failed to include in the instant charge. When the court asked defense counsel to "summarize" his position with respect to the potential Allen charge, defense counsel specifically requested "[l]anguage to the effect that [the jurors] should not compromise their convictions but at the same time they should listen to their fellow jurors . . . ." (Tr. 451.) No such language was included in the Allen charge given by the court. Therefore, defense counsel "made his position known to the court," and the court subsequently rejected that position. Cotto, 331 F.3d at 244.

Thus, the relevant inquiry is whether petitioner was required to repeat his request for a "mild Allen charge" or language reminding the jury not to "compromise their convictions," or to otherwise object to the charge as given by the trial court to satisfy the contemporaneous objection rule. Although respondent concedes that the contemporaneous objection rule is satisfied whenever a defendant requests a specific jury charge but that request is declined, respondent nonetheless argues that "[w]here a trial court . . . 'fails to deliver the charge as requested, the requesting party has an obligation to draw the error to the Judge's attention.'" (Resp. Mem. 10, quoting People v. Whalen, 59 N.Y.2d 273, 280 (1983).)

Respondent's argument is unavailing. As an initial matter, the cases that respondent cites in support of this assertion are inapt. (Id., citing People v. Carpio, 835 N.Y.S.2d 107, 2007 N.Y.

Slip. Op. 03745, at *1 (1st Dep't Apr. 26, 2007); People v. Griffin, 808 N.Y.S.2d 163, 163 (1st Dep't 2005); People v. Rodriguez, 766 N.Y.S.2d 557 (1st Dep't 2003); People v. Muhammed, 755 N.Y.S.2d 869, 869 (2d Dep't 2003).)  In those cases, the defense made *no* request for a specific charge or language prior to the charge being given, and therefore, the trial courts in those cases were never placed "on notice" of defendant's desired instruction, either before or after the instruction was given.  McRae, 271 F. Supp. 2d at 408.  See, e.g., Carpio, 2007 N.Y. Slip. Op. 03745, at *1; Griffin, 808 N.Y.S.2d at 163; Rodriguez, 766 N.Y.S.2d at 557; Muhammed, 755 N.Y.S.2d at 869.  That is not the situation here.

Moreover, it is well established that, under § 470.05(2), a party that has requested certain relief and been denied that relief does not need to make additional protests to preserve its objection.  Cotto, 331 F.3d at 244-45.  "The law does not require litigants to make repeated pointless protests after the court has made its position clear."  People v. Mezon, 80 N.Y.2d 155, 161 (1992); see Cotto, 331 F.3d at 247.  Instead, pursuant to § 470.05(2), a "defendant's attempt to secure a ruling during a proceeding held contemporaneously with the trial [is] sufficient to preserve these issues for review."  People v. Richard, 645 N.Y.S.2d 644, 646 (3d Dep't 1996).  Thus, "a party who has without success requested a particular ruling is deemed to have thereby protested the court's ultimate disposition or failure to rule accordingly sufficiently to raise a question of law with respect to such failure regardless of whether any actual protest thereto was registered."  People v. Davis, 370 N.Y.S.2d 328, 329 (2d Dep't 1975).  Even if defendant only "impliedly sought a ruling" from the court, he can be "deemed to have sufficiently protested [the court's] ultimate determination . . . thereby preserving the issue for appellate review."  People v. Garraway, 779 N.Y.S.2d 925, 925 (3d Dep't 2004) (citations and internal quotation marks

omitted); see N.Y. Crim. Proc. L. § 470.05 ("[A] party who has . . . *impliedly* sought or requested a particular . . . instruction is deemed to have thereby protested the court's ultimate disposition of the matter . . . .") (emphasis added).  Thus, once defense counsel requested a "mild Allen charge" and suggested specific language to be included in that charge, petitioner was not required to object after the court failed to grant defense counsel's request.  (Compare Tr. 451, with People v. Jones, 725 N.Y.S.2d 872, 872 (2d Dep't 2001) (challenge to Allen charge unpreserved when "defense counsel neither requested a specific charge nor objected to the charge as given"), and People v. Ramkisson, 666 N.Y.S.2d 447, 447 (2d Dep't 1997) (same).)  Indeed, such a rule is particularly appropriate in the case of a faulty supplemental jury charge – as the trial judge noted when he advised defense counsel against re-charging the jury in response to counsel's objection to the Allen charge (Tr. 457), any negative impact from a deficient charge is difficult to undo once the charge is given.

Respondent further argues that a party's contemporaneous challenge to an Allen charge on specific grounds fails to preserve an alternate challenge raised on appeal.  (Resp. Mem. 13, citing People v. Melendez, 704 N.Y.S.2d 213 (1st Dep't 2000).)  Specifically, respondent argues that petitioner's post-charge objections to the references to defense counsel's summation in the Allen charge were insufficient to preserve petitioner's coerciveness claim.  But petitioner's coerciveness claim is predicated, not on his subsequent objections to the references to defense counsel's summation in the charge, but on his initial request for the court to issue a "mild Allen charge" and to instruct the jury with "[l]anguage to the effect that they should not compromise their convictions," and the court's failure to do so.  (Tr. 451.)  The fact that counsel also objected to the supplemental charge on certain other grounds following the charge – without

13

also restating the earlier request for language instructing jurors not to abandon their conscientiously held beliefs – does not negate petitioner's earlier request, or affect the preservation of petitioner's coerciveness claim.  Instead, New York courts have recognized that when defense counsel requests a particular instruction, but later advances an alternative reason for challenging the court's instruction that became apparent only after the instruction was given, counsel's earlier request for the instruction nevertheless satisfies the contemporaneous objection rule.  See People v. Johnson, 681 N.Y.S.2d 489, 490 (1st Dep't 1998).  "The mere emphasis of one prong of attack over another or shift in theory on appeal, will not constitute a failure to preserve."  People v. Ayala, 534 N.Y.S.2d 1005, 1017 (2d Dep't 1988).

Respondent cites People v. Hoke, 62 N.Y.2d 1022 (1984), in support of his argument that petitioner's subsequent objection to the Allen charge on an alternative ground negates his earlier request for a "mild Allen charge."  However, Hoke actually contradicts respondent's contention. The defendant in Hoke requested a specific charge, which the court denied, giving a different charge on the same issue.  Id. at 1023.  After this charge was given, the "defendant did not specify why the charge as given was inadequate."  Id.  The Court of Appeals held that "there was preservation as to the court's refusal to charge in accordance with the defendant's request," but "there was no preservation with respect to error in the alibi charge as given."  Id.  Thus, the court held that the defendant's request for a charge preserved his appeal, even though he did not renew that objection after a different charge was given.  Similarly, had Fong not objected to the references to the defense summation in the Allen charge after the charge was given, his earlier request for a "mild Allen charge" would not have preserved such an objection for appellate

review.  However, Fong's earlier request for the denied charge, standing alone, was enough to preserve that particular issue for review.

Contrary to respondent's argument, petitioner's argument on appeal, and in this Court, that the charge as given was unduly coercive is not a different argument than the request for a "mild" charge with specific language reminding jurors not to compromise their convictions.  It is the very same argument.  Any trial judge knows that the danger inherent in <u>Allen</u> charges is the risk of pressuring a jury to reach a verdict by suggesting that the dissenting jurors should go along with the majority.  The request for a "mild" charge with balancing cautionary language is precisely a request for a non-coercive charge, and the vice in failing to include the language requested is precisely that its omission renders the charge coercive.  Petitioner is not here raising a new argument that was not fairly presented to the trial court; he is, rather, objecting to the charge given because the failure to charge substantially as petitioner requested made the charge constitutionally defective.

Thus, petitioner complied with the contemporaneous objection rule, and his <u>Allen</u> charge claim is not procedurally barred.

B.      Adequacy of the State Law Ground

Even if petitioner had not literally complied with the contemporaneous objection rule, the rule would not bar petitioner's <u>Allen</u> charge claim here.  In deciding whether a state law ground is "adequate,"[3] the Supreme Court has established the following considerations: (1) whether the alleged procedural violation was actually relied on in the trial court, and whether perfect

---

[3] Petitioner does not dispute that the state contemporaneous objection rule is "independent" of the merits of the federal claim.

compliance with the state rule would have changed the trial court's decision; (2) whether state case law indicated that compliance with the rule was demanded in the specific circumstances presented; and (3) whether petitioner had substantially complied with the rule given "the realities of trial" and, therefore, whether demanding perfect compliance with the rule would serve a legitimate governmental interest. Lee, 534 U.S. at 381-85; see Cotto, 331 F.3d at 240. The adequacy of a state procedural bar, therefore, is determined with reference to the "particular application" of the rule; it is not enough that the rule "generally serves a legitimate state interest." Cotto, 331 F.3d at 240, quoting Lee, 534 U.S. at 387. A petitioner is not required to demonstrate that all three Lee factors apply to establish that a state law ground was inadequate to bar habeas review; instead, a petitioner may establish inadequacy even where he has demonstrated that only one of the factors applies. Monroe, 433 F.3d at 245. However, each of the three Lee factors favors petitioner in this case.

First, although the first Lee factor is not as relevant in the case of contemporaneous objection as in other cases of procedural bars "because the lack of a contemporaneous objection would not, almost by definition, be mentioned by the trial court," this factor weighs in petitioner's favor, as "the trial court was certainly aware of defense counsel's desire" for a softer Allen charge containing specific language, but decided not to include one. Cotto, 331 F.3d at 242. The trial court solicited requests from both parties as to the language of the charge and petitioner's counsel clearly requested that the court give a "mild Allen charge" and specified the desired language. The trial judge listened to both counsels' requests regarding the Allen charge and deemed their disagreement "pathetic." (Tr. 451.) Although the trial judge did not explicitly deny defense counsel's request regarding the specific language of the Allen charge, he did not

16

include the language requested by defense counsel in the supplemental instruction, and gave a charge that was hardly "mild," thereby effectively denying the request.

Moreover, even if defense counsel had specifically objected to the <u>Allen</u> charge on coerciveness grounds after the trial judge issued the charge, it is unlikely that such an objection would have had any effect on the trial. After counsel requested the <u>Allen</u> charge, the trial judge outlined his intended supplemental instruction, which included language that defense counsel objected to as an unfair characterization of his closing argument. (Tr. 451-53.) The trial judge responded to counsel's concerns, stating that "having been gracious enough to explain to you what I was thinking about doing, I choose at least not at this time to do it." (<u>Id</u>. 453.) Instead, the trial judge gave the instant charge, after which defense counsel objected and moved for a mistrial. (<u>Id</u>. 457.) In response to defense counsel's objection regarding the court's language, the trial judge stated, "I don't think it's a good idea for me to bring them back out" to correct any possible error in the supplemental charge. (<u>Id</u>.) Although defense counsel's post-<u>Allen</u> charge objection was made with respect to the references to defense counsel's summation in the charge, and not to the coerciveness of the instruction, the trial judge's reaction to counsel's post-charge objection – including the judge's professed hostility toward any further charging of the jury – demonstrates that even "if defense counsel had repeated" his initial request for a "mild <u>Allen</u> charge," his request would have been denied. <u>Cotto</u>, 331 F.3d at 242-43. Thus, "there is no reason to believe that the trial court would have changed its mind" after the charge was issued even if defense counsel had registered a further objection to its coerciveness. <u>Id</u>.

The second <u>Lee</u> factor also weighs in favor of petitioner. Evenhanded application of a state procedural rule is determined by "look[ing] to the statute and caselaw interpreting New

York's statutory preservation rule in criminal proceedings." Id. at 243. New York courts have not consistently applied the contemporaneous objection rule to bar appellate review where a party does not repeat his request for a particular jury instruction after he has already requested, and been denied, that instruction. Instead, as discussed above, under both the explicit terms of the contemporaneous objection statute and the case law interpreting it, repeated objections are not necessary once an instruction has been requested and denied. Id. at 244-45; Mezon, 80 N.Y.2d at 161; Garraway, 779 N.Y.S.2d at 925; Richard, 645 N.Y.S.2d at 646; Davis, 370 N.Y.S.2d at 329. "At a minimum, such a practice is not firmly established and regularly followed in the circumstances presented in this case." Cotto, 331 F.3d at 247 (internal quotation marks omitted).

Indeed, even if petitioner had not made an initial request for a "mild Allen charge," New York state courts have not evenhandedly applied the contemporaneous objection rule to bar review of Allen charge challenges even where counsel made no requests for a particular instruction or did not object to the given instruction *at all*. The Appellate Division retains, and has often exercised, discretionary power to review unpreserved challenges to jury charges generally, see N.Y. Crim. Proc. § 470.15, and has done so where such review serves the "interest of justice." Id. at (6); see People v. Williams, 640 N.Y.S.2d 25, 26 (1st Dep't 1996); People v. Alexander, 385 N.Y.S.2d 859, 860 (3d Dep't 1976). Moreover, New York's appellate courts have often exercised this discretionary power to review unpreserved challenges to Allen charges in particular. For example, in People v. Rodriguez, 529 N.Y.S.2d 318 (1st Dep't 1988), the trial court, in response to several notes sent by the jury, delivered a supplemental charge that essentially ordered the jury not to consider evidence upon which the defense relied and also

included "an unbalanced and coercive <u>Allen</u> charge." <u>Id</u>. at 320. The Appellate Division reversed the conviction, stating that, although "defense counsel did not interpose specific objections to the trial court errors . . . concerning the supplemental charge," thereby not preserving those errors for the court's review, "we find these errors to be so egregious" as to mandate reversal "in the interest of justice." <u>Id</u>. <u>See also</u> <u>People v. Travis OO</u>, 654 N.Y.S.2d 467, 468 (3d Dep't 1997) (where the court gave an <u>Allen</u> charge that was "essentially similar" to one that the Court of Appeals held "constituted reversible error," the appellate court considered the charge "in the interest of justice," despite the fact that "defendant did not preserve th[e] issue for appellate review"); <u>People v. Arce</u>, 627 N.Y.S.2d 15, 15 (1st Dep't 1995) (reviewing unpreserved objection to <u>Allen</u> charge "in the interest of justice").

Finally, even assuming arguendo that petitioner did not *literally* comply with the contemporaneous objection rule, it is clear that petitioner at a minimum *substantially* complied with the rule, thereby satisfying the third <u>Cotto</u> factor. 331 F.3d at 245. In evaluating the third <u>Cotto</u> factor, the Court must consider "the asserted state interest behind the contemporaneous objection rule – to ensure that the parties draw the trial court's attention to any potential error while there is still an opportunity to address it." <u>Id</u>. This factor is assessed in light of whether "petitioner had substantially complied with the rule given the realities of trial." <u>Id</u>. at 240; <u>see</u> <u>Monroe</u>, 433 F.3d at 242. Here, at the trial court's request, defense counsel asked for a particular type of <u>Allen</u> charge and for specific language to be included in the charge. Thus, "it seems difficult to argue that defendant had not 'made his position with respect to the ruling known to the court.'" <u>Id</u>., quoting N.Y. Crim. Proc. L. § 470.05(2). At the time petitioner requested the

Allen charge, "the trial court . . . had in clear view the information needed to rule intelligently on the merits" of the request. Lee, 354 U.S. at 366.

Moreover, in determining whether petitioner substantially complied with the contemporaneous objection rule, the Court must consider whether further compliance was practical "given the realities of trial." 331 F.3d at 246. In this case, defense counsel's post-Allen charge conduct was informed by (1) his prior explicit request for a mild Allen charge and for specific language, which was denied; (2) the trial court's brusque dismissal of the proposals of both trial counsel as "pathetic"; (3) a supplemental charge that was similar in tone and language to one rejected as unduly coercive by the Court of Appeals; (4) the trial court's stated hostility towards giving a corrective instruction; (5) the reality that any attempted correction of the charge could cause more damage than good; and (6) a denied request for a mistrial. (Tr. 450-58.) Under these circumstances, and especially given that petitioner's "compliance with New York's preservation rule here was arguably literal, and not just substantial," federal review is not barred. Cotto, 331 F.3d at 246. Instead, at a minimum, petitioner "substantially, if imperfectly, made the basic showing" required under § 470.05(2), and his claim qualifies for federal adjudication. Lee, 534 U.S. at 366.

Accordingly, petitioner's Allen charge claim is not barred by the contemporaneous objection rule, and may be reviewed by this Court.

**III.    The Allen Charge**

A.    Standard of Review

Next, respondent argues that, even if "th[e] Court determines that the state finding that petitioner failed to preserve [the Allen charge] claim is not sufficient to bar this Court from

considering it, it should afford . . . deference to the Appellate Division's clearly articulated alternate holding" that the "Allen charge, under the circumstances here, was not coercive." (Resp. Mem. 16.)  Petitioner counters that "[t]he government's contention that the district court should treat the Appellate Division's decision as a ruling on the merits is contradicted by the plain language of the Appellate Division's opinion."  (Pet. Reply 4.)  The Court agrees.

The standard for federal habeas review hinges on whether petitioner's federal claim was previously adjudicated on the merits in state court, or denied by the state court on other grounds. If the claim has been adjudicated on the merits, the state court's decisions should be reviewed under a deferential standard, by which the state court's decision may be rejected only if it constitutes an "unreasonable" application of Supreme Court law.  28 U.S.C. § 2254(d). However, "[b]y its terms, § 2254(d) requires such deference only with respect to a state-court adjudication on the merits, not to a disposition on a procedural, or other, ground."  Miranda v. Bennett, 322 F.3d 171, 178 (2d Cir. 2003) (citations and internal quotation marks omitted). "Absent . . . deference, conclusions of law and mixed findings of fact and conclusions of law are reviewed de novo."  DeBerry v. Portuondo, 403 F.3d 57, 67 (2d Cir. 2005) (citations and internal quotation marks omitted).  Thus, the relevant inquiry here is whether the Appellate Division rejected petitioner's Allen charge claim on its merits, or whether it rejected that federal claim on procedural grounds.

The state court in this case found that petitioner "failed to preserve his argument that the court's Allen charge was coercive," and "decline[d]" to review the Allen charge claim itself "in the interest of justice."  791 N.Y.S.2d at 53.  However, the appellate court also stated that "were we to review" the Allen charge claim, "we would find that under these circumstances the charge

was not coercive." Id. Respondent argues that the state court's "alternate" decision, though not the "primary" basis for the holding, is sufficient to mandate deference here. (Resp. Mem. 17.) As respondent correctly notes, "state decisions made on the basis of either a state procedural ground or the merits," as well as state decisions "that are silent about the basis for the decision" should be "treated as merits determinations," and as such, are "due . . . deference" by the federal court. (Resp. Mem. 16, citing Jimenez v. Walker, 458 F.3d 130, 146 (2d Cir. 2006) and Sellan v. Kuhlman, 261 F.3d 303, 314 (2d Cir. 2001).) This case, however, does not fall within either of these categories.

Although determining whether a state court rejected a federal claim on its merits appears at first blush to be a straightforward inquiry, like so many procedural aspects of habeas corpus law, this inquiry has been complicated by a host of arguably conflicting Second Circuit and Supreme Court decisions. See Shih Wei Su v. Filion, 335 F.3d 119, 125 (2d Cir. 2003) (characterizing the inquiry as a "mare's nest"). Nevertheless, it is clear that the Appellate Division's rejection of petitioner's Allen claim was not a decision on the merits. The Appellate Division expressly relied on the procedural bar in rejecting the claim, and expressly "decline[d] to review" the claim on the merits "in the interest of justice." 791 N.Y.S.2d at 54. While the court hypothesized that "*were we* to review [the claim], we would find that under these circumstances the charge was not coercive," id. (emphasis added), such language does not establish a merits consideration. Instead, use of the subjunctive form "were we" is indicative of a contrafactual condition, demonstrating that the Appellate Division did not base its holding on the posited hypothetical. See Clark v. Perez, 450 F. Supp. 2d 396, 414 (S.D.N.Y. 2006) (holding that such language is "clearly dicta").

Respondent relies on inapposite case law for its contention that deference is appropriate here. For example, respondent argues that "when a federal court holds that a state court's procedural default finding is not adequate and independent to support the state judgment, . . . deference applies to the state decision" if the state court also disposed of the federal claim on federal law grounds. (Resp. Mem. 17, citing Jones v. Stinson, 229 F.3d 112, 117-19 (2d Cir. 2000), and Jimenez, 458 F.3d 130.) However, although deference is afforded as a matter of "administrative convenience" to a state court decision that is based on *both* state procedural law as well as federal law, such deference is not appropriate where the state court includes a "plain statement" indicating that its decision is based, not on federal law, but on state procedural grounds. Jones, 229 F.3d at 118. The Appellate Division included such a "plain statement" in its decision when it expressly stated that it "decline[d]" to address the merits of petitioner's Allen charge claim. 791 N.Y.S.2d at 54. Although respondent urges the Court to reject this "plain statement" of the appellate court's intention in favor of the subsequent contrafactual "were we to review" language, which respondent argues reflects the appellate court's actual intention, the Circuit has specifically warned against such an undertaking – in cases such as this, where the appellate court expressly declined to address the merits of a federal claim, the Court "ask[s] not what we *think* the state court actually might have intended but whether the state court plainly stated its intention." Jones, 229 F.3d at 118 (emphasis added). A contrary holding would ignore the appellate court's "plain statement" of its intention in favor of pure conjecture. Id.

Nor is the Court persuaded by respondent's reliance on the Circuit's recent decision in Jimenez. In Jimenez, the Circuit found that, "when examining the basis of a state court's adjudication of a federal claim, a federal habeas court" should consider several factors, including

"the face of the state-court opinion" and "whether the state court was aware of [the] procedural bar."  Id., citing Coleman v. Thompson, 501 U.S. 722 (1991).  Respondent does not argue that the considerations set out by Jimenez militate in favor of deference here; indeed, such an argument would be unavailing, as the "face" of the Appellate Division's decision reveals that the appellate court knew about, and relied upon, a state procedural rule in rejecting petitioner's federal claim.  However, respondent argues that, according to Jimenez, such considerations are inapposite where the state court's decision was based on an "either/or" situation, e.g., where the state court rejected petitioner's claim pursuant to *either* a state procedural rule *or* federal law.  Respondent argues that, under such circumstances, the state court's primary reliance on state procedural law is irrelevant, and that deference to the state court decision on the secondary, federal law, grounds is appropriate.

Respondent is correct that, under Jimenez, "a state court's rejection of a federal claim as 'either unpreserved for appellate review or without merit'" should be afforded deference, "regardless of background circumstances."  458 F.3d at 146.  But, as discussed supra, this is not an "either/or" case; instead, the Appellate Division's choice of language here clearly indicates that its discussion of the charge was not an alternative holding, but merely a hypothetical analysis that was not intended to be controlling on the merits of petitioner's federal claim.  Had it intended to reach an alternative holding on the merits, the court could have used the "either/or" language, or stated that its hypothetical discussion of the charge was an alternate ruling, in order to create a "conclusive presumption . . . that the adjudication rested on the merits."  Hawkins v. Costello, 460 F.3d 238, 242 (2d Cir. 2006).  Instead, the court explicitly stated that it declined to review the issue and deliberately used the subjunctive language "were we to review . . . ."  791

N.Y.S.2d at 53. Indeed, the Appellate Division was certainly aware of its broad authority to review the merits of a claim even where the claim has not been preserved, see N.Y. Crim. Proc. § 470.15, discussed supra, and its decision not to review petitioner's Allen charge claim, but to *decline* to review the claim "in the interest of justice," 791 N.Y.S.2d at 53, clearly establishes that the Division did not base its rejection of petitioner's claim on its merits.

Finally, respondent suggests that failure to defer to the state court decision here would "deprive state courts of all deference merely because [the court's] primary procedural holding is found insufficient to bar habeas review." (Resp. Mem. 17.) According to respondent, this result is neither required by the law, "nor would such a rule further" the purpose of habeas relief. (Id.) However, in this case, the state court's holding was based on state procedural law – not just "primar[ily]," but completely. Thus, the Court's decision does not "deprive state courts of all deference" because there is nothing in the state court decision for the Court to defer to. Moreover, where a state court has not relied on federal law in rejecting a federal claim, the application of a deferential standard to the state court's determination would undermine, and not further, the purpose of habeas review. Where "a state court disposes of a federal claim on the merits," the purpose of habeas review is "to ensure that the state court has correctly applied federal law," Mateo v. Fishkill Corr. Facility, No. CV-04-3420, 2007 WL 2362205, at *4 (E.D.N.Y. Aug. 14, 2007), albeit under a deferential standard. However, where a state court has never definitively applied federal law, habeas review under a de novo standard is not only appropriate, but required in order to ensure the correct, and consistent, application of federal law.

Accordingly, the Court will review petitioner's Allen charge claim de novo.

B.	Undue Coercion

Petitioner argues that the <u>Allen</u> charge given by the trial court was unconstitutionally coercive because it "'both obligate[d] jurors to convince one another that one view was superior to another . . . [and] fail[ed] to remind those jurors not to relinquish their own conscientiously held beliefs.'" (Pet. Mem. 27-28, quoting <u>Smalls v. Batista</u>, 191 F.3d 272, 278 (2d Cir. 1999).) Respondent counters that "the trial court's <u>Allen</u> charge, under both state and federal law, did not deprive petitioner of a fair trial," and therefore that petitioner is not entitled to habeas relief. (Resp. Mem. 25.) Both state and federal case law compel the conclusion that the <u>Allen</u> charge violated petitioner's due process right to a fair trial.

Generally, the propriety of a state trial court's jury instructions is a matter of state law that does not raise a federal constitutional question. <u>See</u> <u>Estelle v. McGuire</u>, 502 U.S. 62, 71-72 (1991); <u>United States ex rel. Smith v. Montanye</u>, 505 F.2d 1355, 1359 (2d Cir. 1974). In order to argue successfully that a state trial court's response to a jury's question was erroneous, a habeas petitioner must show "not only that the instruction misstated state law but also that the error violated a right guaranteed to him by federal law." <u>Sams v. Walker</u>, 18 F.3d 167, 171 (2d Cir. 1994), citing <u>Casillas v. Scully</u>, 769 F.2d 60, 63 (2d Cir. 1985); <u>see</u> <u>also</u> <u>Cupp v. Naughten</u>, 414 U.S. 141, 146 (1973) ("[I]t must be established not merely that the instruction is undesirable, erroneous, or even universally condemned, but that it violated some right which was guaranteed to the defendant by the Fourteenth Amendment.") (internal quotation marks omitted). In reviewing a state court's jury instruction, a habeas court must consider "whether 'the ailing instruction by itself so infected the entire trial that the resulting conviction violates due

process.'"  Grey v. Henderson, 788 F. Supp. 683, 693 (E.D.N.Y. 1991), quoting Cupp v.

Naughten, 414 U.S. at 147.

Thus, although trial courts have significant discretion in determining the appropriate

answer to a jury question, the court's answer may not deprive the defendant of a constitutional

right, see Ortiz v. Artuz, 113 F. Supp. 2d 327, 339 (S.D.N.Y. 2000), for example, by using an

Allen charge to "improperly coerce" a deadlocked jury into reaching a verdict.  Spears v.

Greiner, 459 F.3d 200, 206 (2d Cir. 2006).  Indeed, it is well established that an unduly coercive

Allen charge violates a defendant's Fourteenth Amendment right to a fair trial.  See, e.g.,

Lowenfield v. Phelps, 484 U.S. 231, 236 (1988); Spears, 459 F.3d at 206; People v. Riley, 70

N.Y.2d 523, 532 (1987).  Cf. Spears, 459 F.3d at 204 n.4 ("Due to the potential coercive effects

on jurors in the minority, the Allen charge has been called the 'dynamite charge' because '[l]ike

dynamite, it should be used with great caution, and only when absolutely necessary.'")

(alterations in original), quoting United States v. Flannery, 451 F.2d 880, 883 (1st Cir. 1971).  If

an Allen charge is found to be unduly coercive, the underlying conviction must be vacated and a

new trial is required.  See, e.g., United States v. Scott, 547 F.2d 334, 336-37 (6th Cir. 1977)

(finding that "such a rigid rule is required" when an Allen charge goes beyond "the limits . . .

which a trial court should not venture in urging a jury to reach a verdict") (citation and internal

quotation marks omitted).  Both federal and New York state courts have repeatedly vacated

convictions produced by an unconstitutionally coercive Allen charge.[4]

---

[4] See, e.g., Smalls, 191 F.3d 272; Weaver v. Thompson, 197 F.3d 359 (9th Cir. 1999);
Scott, 547 F.2d 334; United States ex rel. Tobe v. Bensinger, 492 F.2d 232 (7th Cir. 1974);
Aponte, 759 N.Y.S.2d 486; People v. Nunez, 683 N.Y.S.2d 231 (1st Dep't 1998); People v.
Ramirez, 636 N.Y.S.2d 847 (2d Dep't 1996); People v. Rodriguez, 529 N.Y.S.2d 318 (1st Dep't
1988); People v. Stokes, 527 N.Y.S.2d 19 (1st Dep't 1988); People v. Mabry, 397 N.Y.S.2d 7

Although there is no precise test for determining when an <u>Allen</u> charge is unduly coercive, and a habeas court must consider the charge "'in its context and under all the circumstances'" in deciding whether it was unconstitutionally coercive, <u>Spears</u>, 459 F.3d at 205, quoting <u>Lowenfield</u>, 484 U.S. at 237, quoting in turn <u>Jenkins v. United States</u>, 380 U.S. 445, 446 (1965) (per curiam), the Second Circuit has established two "necessary" components of a non-coercive <u>Allen</u> charge. <u>Spears</u>, 459 F.3d at 206. Specifically, an <u>Allen</u> charge is inherently coercive if it both: "(1) obligated jurors to convince one another that one view was superior to another, and (2) failed to remind those jurors not to relinquish their own conscientiously held beliefs." <u>Id.</u>, quoting <u>Smalls</u>, 191 F.3d at 278. Both elements are present here; accordingly, habeas relief is not only appropriate in this case – it is required.

First, "a necessary component of any <u>Allen</u>-type charge requires the trial judge to admonish the jurors not to surrender their own conscientiously held beliefs." 191 F.3d at 279, citing <u>United States v. Strothers</u>, 77 F.3d 1389, 1391 (D.C. Cir. 1996) and <u>United States v. Mason</u>, 658 F.2d 1263, 1268 (9th Cir. 1981). Thus, an <u>Allen</u> charge is *inherently* unconstitutionally coercive if it "fail[s] to remind . . . jurors not to relinquish their own conscientiously held beliefs." 191 F.3d at 278. In this case, the trial judge did not remind the jurors not "to relinquish their own conscientiously held beliefs" at any point during the <u>Allen</u> charge, even though the defense counsel had specifically requested that such language be included in the charge. Although there is no "bright-line rule" requiring "specific cautionary language" for an <u>Allen</u> charge to be non-coercive, there must at a minimum be some language in the charge that reminds jurors "not to relinquish their own conscientiously held beliefs," for

_____

(2d Dep't 1977); <u>People v. Demery</u>, 400 N.Y.S.2d 135 (2d Dep't 1977).

28

example, by reminding jurors that a verdict should be "consistent with the conscience of the jury." <u>Spears</u>, 459 F.3d at 206 & n.6, citing <u>Smalls</u>, 191 F.3d at 278, and <u>Campos v. Portuondo</u>, 193 F. Supp. 2d 735, 739-41 (S.D.N.Y. 2002).  The failure of the trial judge in this case to remind the jurors that they were entitled to stand their ground "encouraged [them] to abandon, without any principled reasons, doubts that [they] conscientiously [held] as to [the] defendant's guilt." <u>United States v. Melendez</u>, 60 F.3d 41, 51 (2d Cir. 1995).  <u>See also</u> <u>United States v. Burke</u>, 700 F.2d 70, 80 (2d Cir. 1983); <u>People v. Ford</u>, 78 N.Y.2d 878, 880 (1991); <u>People v. Kinard</u>, 626 N.Y.S.2d 858, 858 (2d Dep't 1995); <u>People v. Ashenden</u>, 460 N.Y.S.2d 99, 100 (2d Dep't 1983).

Second, an <u>Allen</u> charge is also unconstitutionally coercive when it "obligate[s] jurors to convince one another that one view was superior to another."  191 F.3d at 278; <u>see</u> <u>Spears</u>, 459 F.3d at 206.  Here, the <u>Allen</u> charge did just that.  After the <u>Allen</u> charge was given, defense counsel alerted the trial court that the charge had referred several times to the evidentiary record, thereby undermining defense counsel's theory during summation that defendant's innocence had been established, not by what was in the record, but by what was *not* in the record.  (<u>See</u>, <u>e.g.</u>, Tr. 413 (arguing that "[t]he lack of marked money in this case . . . seals it").)  Moreover, the <u>Allen</u> charge here derided legitimate arguments that jurors supporting a guilty verdict might well make, telling the jurors that "if somebody is talking about . . . it couldn't be that way because," they should simply "forget that."  (Tr. 455.)  Jurors are certainly entitled to argue that, based on their common sense and experience, "it couldn't be" the way the prosecution witnesses testified.

The trial judge acknowledged that the charge could have been interpreted as biased against the defense (<u>id</u>. 457), but recommended against giving a corrective instruction (<u>id</u>.).

Thus, although the trial court did not explicitly favor one side in the charge, it acknowledged post-charge that the supplemental instruction could have been interpreted as favoring the prosecution, but failed to do anything to correct this perceived bias, thereby implicitly encouraging the jurors to return a prosecution verdict. Regardless of whether a corrective instruction would have been appropriate under the circumstances, the combination of the failure of the trial judge to remind the jurors not to relinquish their conscientiously held beliefs, the potential bias of the instruction, and the fact that the jury was deadlocked eight to four in favor of a guilty verdict, establishes that the Allen charge here did not simply pressure the jury into reaching *a* verdict, but "obligated [the] jurors to convince one another" – specifically, the minority jurors – to reach a *prosecution* verdict. Smalls, 191 F.3d at 278; see id. at 281 (where a jury is unevenly deadlocked, cautionary language is necessary to prevent "minority jurors [from] believ[ing] that unless they are able to convince the majority, they should abandon their own conscientiously held position"). See, e.g., Burke, 700 F.2d at 80 (a "non-coercive" Allen charge must be "evenhanded"); United States v. Rao, 394 F.2d 354, 356 (2d Cir. 1968) (suggesting that, where a jury "reveal[s] whether the majority were for acquittal or conviction," there is a higher probability that an Allen charge could be interpreted as "indicating [a] preference" for one side).

In order to shield himself from this clearly applicable precedent, respondent argues that the instant Allen charge did include the type of cautionary language alluded to in Spears, when the trial judge instructed that the jurors shouldn't "talk[] about things that weren't testified to," and that "in evaluating the trial evidence jurors had 'an absolute right to say, I don't believe this or I don't believe anything.'" (Resp. Mem. 22, quoting Tr. 455-56.) Respondent argues that this is the type of "cautionary language" that is required to satisfy due process. This argument is

unpersuasive. The judge's instruction not to "talk[] about things that weren't testified to" was not an admonition to the jurors not to relinquish their conscientiously held beliefs, but instead merely a warning that the jurors should not discuss anything other than those facts established in the record.[5] Moreover, the judge's reference to the jurors' "absolute right to say, I don't believe this or I don't believe anything," taken "in the context" of the rest of the charge as it must be, Lowenfield, 484 U.S. at 237, clearly refers to the jurors' ability to evaluate the credibility of the witnesses, and not to their right to maintain their conscientiously held beliefs as to defendant's guilt in the face of contrary views.

Respondent also argues that, even if the trial judge did not instruct the jurors not to abandon their conscientiously held beliefs in order to reach a verdict, the "initial jury charge" included such language, thereby vitiating the need for such language in the Allen charge. (Resp. Mem. 22.) Respondent cites no case law in support of his argument, presumably because none could be found. Instead, it is well established that such language must be included *in the Allen charge itself* in order to render the charge non-coercive. See Smalls, 191 F.3d at 278; Rodriguez 529 N.Y.S.2d 318. Indeed, Smalls and Spears both require that the trial judge "*remind*" the jurors that they have a right to maintain their conscientiously held beliefs in the face of contrary views, 191 F.3d at 278 (emphasis added); see 459 F.3d at 206 – a "remind[er]" is necessary precisely because the jurors ordinarily have already been instructed about their right to maintain their conscientiously held beliefs during the initial charge.

_____

[5] Indeed, this language is somewhat ambiguous, and could reasonably be understood by jurors in an incorrect way: while jurors are properly instructed not to speculate or consider "facts" outside the record, it is perfectly legitimate for jurors to discuss "things that weren't testified to" in the sense of pointing out the *absence* of evidence as a factor that could raise a reasonable doubt – particularly in light of defense counsel's summation in this case.

Finally, respondent argues that, regardless of whether the instant Allen charge would have been unconstitutionally coercive under Smalls, the Circuit in Spears modified its holding in Smalls in such a way as to render the instant charge non-coercive under federal law. Respondent's argument is unavailing. Spears did not modify Smalls; indeed, the Spears court specifically held that "[t]his Court did not create any new rule in Smalls that would replace the Supreme Court's standard in Lowenfield that an Allen charge must be evaluated 'in its context and under all the circumstances,'" and proceeded to apply those same "standards" to the Allen charge at issue in that case. 459 F.3d at 206.

As support for his argument that Spears modified Smalls, respondent argues that the Allen charge in Spears was found to be non-coercive, while the Allen charge in Smalls was found to be coercive. Respondent misunderstands Spears – the Circuit found the Allen charge in Spears to be non-coercive, not because it applied a different test than was applied in Smalls, but because the charge did not include the type of language prohibited by Smalls. Conversely, the instant Allen charge satisfies the Smalls test, and is distinguishable from the one in Spears.[6]

---

[6] The full text of the supplemental charge at issue in Spears is as follows:

> The answer to that one is that you have just barely begun your deliberations. We spent a good deal of time in selecting the jury and hearing the testimony. Please give it your full attention. I have a very strong feeling that you should be able to reach a verdict. [Following an objection, the court added:]
> Members of the jury, there has been an objection by counsel to my statement that a lot of time and money has been expended on this case. That shouldn't be part of your consideration. What you should consider is what the facts are with the idea, with an attempt to reach a verdict if that be possible. Based on the very few hours that you have deliberated, I tell you that it's far too premature at this point to send such a note. Please continue your deliberations with a view toward arriving at a verdict if that's possible.

First, the <u>Allen</u> charge given by the <u>Spears</u> trial court was unquestionably the sort of "mild" charge that defense counsel sought in this case.[7]  The <u>Spears</u> instruction simply reminded the jury that they had not been deliberating very long, and asked the jury simply to "attempt to reach a verdict if that is possible," language the Second Circuit specifically cited and highlighted in affirming the denial of habeas corpus.  459 F.3d at 206.  Far from utilizing such mild language, the judge here told the jury essentially that it was required to reach a verdict.  Second, the <u>Spears</u> court noted that defense counsel's failure "to object to the trial court's revised supplemental charge is also a persuasive factor . . . in finding that the charge was not improperly coercive."  However, as also previously established, defense counsel requested a "mild <u>Allen</u> charge" in this case, including specific language reminding jurors not to relinquish their conscientiously held beliefs, and then objected to the instant <u>Allen</u> charge and moved for a mistrial on that basis.

Finally, whereas in <u>Spears</u>, after the supplemental charge was given, "[t]he jury continued deliberating for the rest of the day, resuming the following morning, and was unable to reach a verdict with respect to Spears's co-defendant," <u>id</u>. at 207, in this case, a verdict was returned the same afternoon; indeed, the jury deliberated for only around thirty minutes before

_____

459 F.3d at 202.

    [7] Indeed, it is not especially clear that the <u>Spears</u> charge is properly characterized as an <u>Allen</u> charge at all.  When a jury returns a "deadlock" note after so short a period of deliberations, under circumstances suggesting that the jury has essentially reported an initial vote and has not yet begun, thoughtful trial judges frequently advise the jury, as did the court in <u>Spears</u>, that "you have just barely begun your deliberations," and that such a conclusion is "premature."  459 F.3d at 202.  This is quite different from the kind of charge discussed in <u>Allen</u> and its progeny, and radically different from the sort of coercive and intimidating language employed by the judge in this case.

returning a guilty verdict.[8]  While the lack of a precipitous verdict in <u>Spears</u> weighed against a

coerciveness finding in that case, 459 F.3d at 206-07; <u>see also</u> <u>Melendez</u>, 60 F.3d at 51; <u>People</u>

<u>v. Gonzalez</u>, 687 N.Y.S.2d 170 (2d Dep't 1999) (<u>Allen</u> charge not coercive as indicated by fact

that jury deliberated for three hours after charge); <u>People v. Osborne</u>, 669 N.Y.S.2d 510 (2d

Dep't 1998) (no coercion where the jury continued to deliberate for over three hours before

returning its verdict); <u>People v. Glover</u>, 564 N.Y.S.2d 273 (1st Dep't 1990) (fact that jury

deliberated for four hours after <u>Allen</u> charge was indication of lack of coercion), the presence of

a precipitous verdict in this case weighs in favor of such a finding.  <u>See</u> <u>Aponte</u>, 759 N.Y.S.2d

486; <u>People v. Cartagena</u>, 432 N.Y.S.2d 176 ( 1980).[9]

Thus, federal law mandates habeas relief in this case.  However, even assuming arguendo

that the instant <u>Allen</u> charge does not entirely satisfy the <u>Smalls</u> test, habeas relief is still

warranted here.  The requirements laid out by <u>Smalls</u> constitute the minimum required for an

<u>Allen</u> charge to be upheld – an <u>Allen</u> charge that features the two characteristics identified in

<u>Smalls</u> is necessarily coercive; however, the absence of those specific defects does not insulate

an <u>Allen</u> charge from a finding coercion.  Instead, as previously noted, a habeas court must

---

[8] Respondent argues that the jury deliberated "for more than an hour [after the
<u>Allen</u> charge] before returning its verdict."  (Resp. Mem. 22.)  The record belies respondent's
assertion.  After the issuance of the <u>Allen</u> charge, the jury retired to deliberate at 3:00 p.m. (Tr.
456.)  At 3:25 p.m., the jury requested a read-back of the detectives' testimony.  (Dannelly Decl.
Ex. B at 22, citing "Supreme Court file [3:25 p.m. juror note]".)  Deliberations did not resume
until 4:05 p.m. (Tr. 460), and just ten minutes later, the jury indicated that it had reached a
verdict.  Thus, contrary to respondent's representation, the jury actually deliberated for
approximately half an hour after receiving the <u>Allen</u> charge before reaching a verdict.

[9] Indeed, at least one court that was presented with the same time span between the
issuance of the <u>Allen</u> charge and the return of the verdict as that presented here found that the
short duration of the jury's deliberations weighed in favor of a coerciveness determination.  <u>See</u>
<u>Cartagena</u>, 432 N.Y.S.2d at 76.

consider the charge "'in its context and under all the circumstances'" in deciding whether it was unconstitutionally coercive. Spears, 459 F.3d at 205, quoting Lowenfield, 484 U.S. at 237, quoting in turn Jenkins v. United States, 380 U.S. 445, 446 (1965) (per curiam). Therefore, if the Allen charge "as a whole" is found to be coercive, habeas relief is warranted. People v. Williams, 762 N.Y.S.2d 644 (3d Dep't 2003); see People v. Gil, 685 N.Y.S.2d 746 (2d Dep't 1999).

In determining whether the Allen charge was coercive under the totality of the circumstances presented here, the Court finds the New York Court of Appeals's decision in Aponte persuasive. In Aponte, the Court of Appeals affirmed the Appellate Division's reversal of petitioner's conviction on the basis that the trial court's Allen charge: "(1) overemphasized the need to get a result, (2) suggested that the jurors were failing in their duty, (3) stressed that '[s]omething happened' in the case, (4) presented jurors with the prospect of prolonged deliberations, and (5) failed to caution jurors not to surrender their conscientiously held beliefs." 2 N.Y.3d at 308. The Court of Appeals further found that "[w]hile perhaps no one of these five flaws would alone be enough to warrant reversal, their combined effect requires it." Id.

The Appellate Division's conclusion that the Allen charge in this case was "less prejudicial" than that given by the same judge and rejected by the Aponte court as unconstitutionally coercive, Fong, 791 N.Y.S.2d at 54, cannot be supported. The charges in the two cases are substantially identical in the relevant respects. The instant Allen charge exhibited all of the same flaws that mandated reversal in Aponte. With respect to the first two factors listed by the Aponte court as establishing coerciveness, respondent does not even attempt to distinguish the Aponte charge from the instant charge. The instant Allen charge clearly

"overemphasized the need to get a result" by stating that "you folks *have to sit there* and mentally try to man[a]ge [a verdict] from your assessment of the evidence," without suggesting the possibility that a verdict may not be reached in the case. (Tr. 454.) When a judge tells a jury that "You *can't* just say, oops, we can't decide this," and that "the guidance is *go through whatever you need to go through* to reach the verdict" (Tr. 454-55; emphasis added), a finding of coercion is unavoidable: the jury has been expressly ordered to reach a verdict at all costs ("go through whatever you need to go through") and that a failure to reach agreement is unacceptable ("you can't say . . . we can't decide this").

Moreover, the trial court did not merely "suggest[]" that the jurors were failing in their duties – it admonished them, directly and harshly attacking their capacity to fulfill their role as jurors: "Let posterity not know what it is you're talking about . . . . What do you want from me? If you didn't want to be here, if you think this is a decision beyond your capacity to reach, you shouldn't have allowed yourself to be sworn as jurors." (Id. 453-54.) Both the Aponte court and the Appellate Division correctly found that "sham[ing]" of the jurors is an improperly coercive tactic which forces the jurors to choose between returning a verdict, regardless of their personal beliefs, and risking repeated embarrassment and criticism from the judge. Aponte, 759 N.Y.S.2d at 489; Fong, 791 N.Y.S.2d at 54.

Respondent's attempt to distinguish the instant Allen charge from the Aponte charge with respect to the third and fourth factors is unavailing. Although respondent concedes that, "[t]hough in both cases, the court compared a criminal trial to a carnival game in which, using a mallet, the People either 'rang the bell or they didn't,'" respondent argues that here, the court stated that it was using "the strength test example as an 'analogy' to describe the prosecution's

burden of proof," which respondent suggests distinguishes the instant <u>Allen</u> charge from the one given in <u>Aponte</u>. (Resp. Mem. 21, quoting Tr. 453-54.) But the <u>Aponte</u> court nowhere indicated that the "ring the bell" analogy would be appropriate if it was used only in reference to the prosecution's burden of proof as suggested by respondent; instead, the <u>Aponte</u> court found that language to be coercive because it indicated that "[s]omething happened" in that case, and that the case was "not a nonevent." 759 N.Y.S.2d at 488. The instant charge included language *identical* to that rejected as coercive in <u>Aponte</u>: "*Something happened in this case. They rang the bell or they didn't. It was not a non event.*" (Tr. 454-55 (emphasis added).)

Next, respondent argues that, "here, unlike in <u>Aponte</u>, the court in no way threatened the jury with the possibility of prolonged deliberations," and therefore, the fourth <u>Aponte</u> factor does not apply to this case. (Resp. Mem. 21.) But this factor actually militates more strongly in favor of Fong than it did in favor of the petitioner in <u>Aponte</u>. In <u>Aponte</u>, the trial court instructed the jurors that "[w]hether there is in this case the rare occurrence of a jury unable to resolve a case is not a factual decision . . . . We are nowhere near at the point where I would begin to consider the possibility that you folks might not be able to resolve this case." 759 N.Y.S.2d at 488. Here, the trial judge never even suggested the possibility that the jurors could *ever* be "unable" to resolve the case; instead, the trial judge definitively instructed the jury that they could not say "oops, we can't decide this." (Tr. 454.) Thus, the instant <u>Allen</u> instruction left the jurors with the impression that they had no choice but to reach a verdict, and that deliberations would continue ("go through whatever you need to go through") until they did.

Furthermore, with respect to the fifth factor, it has already been established that the instant charge "failed to caution jurors not to surrender their conscientiously held beliefs." 2

N.Y.3d at 308. Thus, in sum, the instant <u>Allen</u> charge did contain just one of the indicia of a

coercive <u>Allen</u> charge identified in <u>Aponte</u> – it contained *all* of them.[10] Accordingly, taken "in

_____

[10] Indeed, the only consideration that weighs against a coerciveness finding in this case is
that, after the <u>Allen</u> charge was issued, the jury requested, and received, a read-back of witness
testimony. <u>See</u>, <u>e.g.</u>, <u>Gonzalez</u>, 687 N.Y.S.2d at 171 (fact that jurors considered "substantive
issues" after the <u>Allen</u> charge was given militated against a coerciveness finding). However, as
discussed <u>supra</u>, the <u>Allen</u> charge must be considered "in its context and under all the
circumstances" in deciding whether it was unconstitutionally coercive. <u>Spears</u>, 459 F.3d at 205
(internal quotation marks omitted). The presence of one factor weighing against coerciveness
cannot ameliorate the "substantial and injurious effect" that the charge otherwise had on the
verdict in this case. <u>California v. Roy</u>, 519 U.S. 2, 6 (1996), quoting <u>Brecht v. Abrahamson</u>, 507
U.S. 619, 637 (1993).

Any further consideration the jurors might have given to the evidence in this case after
the <u>Allen</u> charge was issued was extremely cursory. As discussed <u>supra</u>, the jurors only
deliberated for approximately half an hour after the <u>Allen</u> charge was issued, and for only ten
additional minutes after the testimony was read back. Thus, the jury's consideration of the read-
back testimony was extremely brief – even though the actual read-back lasted almost an hour –
and does not definitively reflect any further in-depth consideration of the evidence after the
<u>Allen</u> charge was issued.

Furthermore, the jury's consideration of the evidence post-<u>Allen</u> charge was potentially
tainted by the trial judge's failure to remind the jurors of the government's burden of proof.
Several circuits have held that an <u>Allen</u> charge should include a specific reminder to the jury as
to the government's burden of proof so as not to "tip the scales toward" a verdict. 1 Leonard B.
Sand, et al., Modern Federal Jury Instructions, Inst. 9-11 at 9-46. <u>See</u> <u>United States v.
McElhiney</u>, 275 F.3d 928, 938 n.7 (10th Cir. 2001); <u>United States v. Hernandez-Albino</u>, 177
F.3d 33, 38 (1st Cir. 1999). Although the Second Circuit has found that such a reminder is not
required to render an <u>Allen</u> charge non-coercive, <u>see</u> <u>Melendez</u>, 60 F.3d at 52, it only so found
where it was otherwise clear that the jury was aware of its obligation "that in order to convict the
defendant[], the government must prove all elements of the crime charged beyond a reasonable
doubt." <u>Id</u>. <u>See</u>, <u>e.g.</u>, <u>United States v. Clayton</u>, 172 F.3d 347, 352 (5th Cir. 1999); <u>United States
v. Quintero-Barraza</u>, 57 F.3d 836, 842 (9th Cir. 1995).

Conversely, in this case, it is unclear whether the jury was aware of its obligation to find
that the government had met its burden of proof. The jury note that precipitated the instant
<u>Allen</u> charge stated, "[f]our jurors believe he's not guilty the rest believe he's guilty." (Tr. 450.)
In response to the indication by the jury that certain jurors "believe[d]" in defendant's guilt, it
would have been reasonable for the trial court to remind the jurors that they could only find in
favor of the government, not simply if they "believe[d]" in defendant's guilt, but if they held
such a belief beyond any reasonable doubt. Thus, in order to "safeguard against coercion," the
trial court should have "again call[ed] the jury's attention to the presumption of innocence, the
burden of proof, and the requirement that guilt must be established beyond a reasonable doubt."
<u>McElhiney</u>, 275 F.3d at 938 n.7. Instead, the trial court only made vague reference to the

its context and under all the circumstances," Lowenfield, 484 U.S. at 237, the charge was

unconstitutionally coercive, and habeas relief is warranted here.

Finally, like the Appellate Division, the Court notes "with some dismay," 791 N.Y.S.2d

53, that the judge in this case has frequently been admonished or reversed for unorthodox and

incorrect jury instructions,[11] and has even been reversed for giving this particular instruction

(albeit after the charge in this case was given). The Circuit has previously indicated that

"remarkable consistency and frequency" in the failings of a particular trial judge to follow proper

procedure "supports [the] conclusion that the errors involved in [a defendant's] trial are not

simply technical failings, but errors of a constitutional dimension." Gaines v. Kelly, 202 F.3d

598, 607 (2d Cir. 2000).

Our judicial system provides jurors with an awesome responsibility, placing a

defendant's liberty in the hands of jurors who are "by design, better suited than courts to

_____

prosecution's "burden of proof" without specifying that the prosecution must prove its case
beyond a reasonable doubt. (Tr. 454.) The court's failure to do so potentially tainted the jury's
consideration of the evidence after the Allen charge was issued.

    [11] See Brown v. Greene, No. 06 Civ. 4824, 2007 WL 1379873, at *25 (S.D.N.Y. May 11,
2007) (granting petition where defense counsel failed to object to Justice McLaughlin's
"constitutionally deficient and confusing burden of proof jury charge"); Johnson v. Poole, No. 02
Civ. 5349, 2003 WL 118505, at *3 (S.D.N.Y. Jan. 14, 2003) (denying habeas petition but
criticizing Justice McLaughlin's use of the voting analogy to explain unanimous verdicts by
stating the charge was not "one that the Court would consider ideal"); Aponte, 2 N.Y.3d 304
(discussed supra); People v. Jones, 797 N.Y.S.2d 63, 64 (1st Dep't 2005) (noting "some of the
language employed by" Justice McLaughlin had been previously "disapproved" of by the
Appellate Division); People v. Garcia, 788 N.Y.S.2d 599, 599-600 (1st Dep't 2005) (same);
People v. Chisolm, 789 N.Y.S.2d 21, 22 (1st Dep't 2005) (stating "it would have been preferable
for [Justice McLaughlin] to employ the Criminal Jury Instructions"); People v. Johnson, 783
N.Y.S.2d 5, 9 (1st Dep't 2004) (reversing conviction where jury instruction improperly altered
the evidentiary standard); People v. Cruz, 568 N.Y.S.2d 763, 764 (1st Dep't 1991) (stating that
instructions employed by Justice McLaughlin "have been criticized as potentially confusing to
the jury").

evaluating and giving effect to the complex societal and moral considerations that inform the selection of publicly acceptable criminal punishments." Atkins v. Virginia, 536 U.S. 304, 324 (2002). Jurors cannot perform this role as protectors of liberty if they are not properly instructed about that role, and instead are subjected to harsh and demeaning language that unfairly pressures them to reach a verdict at all costs.

Since the last words the jury heard from the trial judge in this case improperly coerced the jury to reach a verdict, and undermined the willingness of jurors with conscientious doubts about guilt to adhere to their views, petitioner was denied a fair trial.

## CONCLUSION

For the reasons set forth above, Fong's writ of habeas corpus is granted and petitioner's conviction for Criminal Sale of a Controlled Substance in the Third Degree is vacated. The State of New York may, at its option, re-try petitioner on this count within ninety (90) days of this Opinion and Order. The Clerk of the Court is directed to close this case.

SO ORDERED.

Dated: New York, New York
      November 21, 2007

                    GERARD E. LYNCH
                    United States District Judge